UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANDREW BRYANT SHEETS,

     Plaintiff,

    v.                      Case No.:  2:24-cv-00958-JES-DNF

TONY PRIBBLE, in personal and
professional capacity; LINDA
ARMSTRONG, in personal and
professional capacity; JULIE
SEARGENT, in personal and
professional capacity; ROBERT
CESTARO, in personal and
professional capacity; AND
HECTOR FLORES, in personal and
professional capacity;

     Defendants.

---

**OPINION AND ORDER**

This matter comes before the Court on two motions to dismiss. Defendants Robert Cestaro ("Cestaro"), Hector Flores ("Flores"), and Tony Pribble ("Pribble") filed a Motion to Dismiss (Doc. #116) on July 7, 2025, to which *pro se* Plaintiff Andrew B. Sheets ("Sheets") filed a Response in Opposition (Doc. #120) on July 28, 2025. Defendants Linda Armstrong ("Armstrong") and Julie Seargent ("Seargent") filed a Motion to Dismiss (Doc. #117) on July 9, 2025, to which Sheets filed a Response in Opposition (Doc. #121) on July 30, 2025. For the reasons set forth below, the motions are granted.

**I.**

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555; see also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010)(stating the same). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011)(citations omitted); Erickson v. Pardus, 551 U.S. 89 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially

plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012)(citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

Pro se pleadings are held to a less stringent standard than counseled pleadings and, therefore, are liberally construed. Campbell v. Air Jam. Ltd., 760 F.3d 1165, 1168 (11th Cir. 2014). Nevertheless, this liberal construction does not entitle a court to serve as de facto counsel to a pro se party or rewrite deficient pleadings. Id. at 1168-69. Pro se litigants are still required to conform to procedural rules. Albra v. Advan, Inc., 490 F.3d 826, 829 (11th Cir. 2007); Goldsboro v. Ivey, No. 25-11394, 2026 WL 507421, at *3 (11th Cir. Feb. 24, 2026)

**II.**

The operative pleading, the Second Amended Complaint ("SAC") (Doc. #114), makes the following factual allegations:

Sheets is an "independent journalist" who practices "Government Accountability Journalism" and whose "media outlets" have accrued millions of views. (Doc. #114, ¶ 8.) All the Defendants are employees of Charlotte County. (Id. ¶ 5.) In 2019, Charlotte County presented a PowerPoint to its employees about "Government Accountability Journalism." (Id. ¶ 9.) Defendants

-3-

Armstrong, Cestaro, Pribble, and Seargent were all aware of Sheets's "Government Accountability Journalism" because they had previously been recorded and published on Sheets's social media platforms.  (Id. ¶ 10.)  Defendant Flores also knew of Sheets's "Government Accountability Journalism."  (Id. ¶ 37.)

On October 21, 2020, Sheets was at a Charlotte County public library attempting to film the closing of the polls.[1]  (Id. ¶¶ 15-16.)  Seargent and Cestaro were working at the library.  (Id. ¶¶ 20-21.)  Seargent was serving as "an election worker" and "was in control of the election," while Cestaro was "an armed employee of Weiser Security," providing security for the election.  (Id. ¶¶ 20-21, 23.)  Sheets asked Seargent if he could film the closing of the polls.  (Id. ¶ 20.)  Seargent and her supervisor, Armstrong, told Sheets he was not allowed to film the closing of the polls.  (Id. ¶¶ 29, 41.)  Citing a violation of Charlotte County Rule 8, Seargent and Cestaro kicked Sheets out of the library.  (Id. ¶ 23.)  Rule 8 provides:

> **THE FOLLOWING CONDUCT IS PROHIBITED BY COUNTY ORDINANCE 2016-027**
> . . .
>     8. Audio or video recording anywhere inside of County buildings or conveyances, except during public meetings as provided below, or as otherwise approved by

---

[1] Plaintiff alleges that he was filming at the "Charlotte County library," however, does not clarify a specific branch.  (Doc. #14, ¶ 16.)  Cestaro, Flores, and Pribble state it was the Mid-County Library, while Armstrong and Seargent state it was the "Charlotte County Library."  (Doc. #116, p. 4; Doc. #117, ¶ 1.)  The difference is not material to any issue in the motions, so the Court will simply refer to "a Charlotte County public library" or "the library" for this Opinion and Order.

the County Administrator. Any audio or video recording that is conducted outside of County buildings must be done in an orderly manner and must not interfere with the use of County facilities by visitors; impede County employees or County officials in the performance of their duties; or harass visitors, employees or County officials. Any person recording another must cease doing so immediately if any visitor, County employee or County official who is not directly performing public duties expresses his or her desire not to be recorded. **Anyone failing to immediately cease audio or video recording any visitor, employee or County official who is not directly performing public duties, and who has expressed a desire not to be recorded, will be immediately trespassed without warning.** (This does not apply to, 1) Authorized law enforcement personnel, or 2) County officials, where wither [sic] are directly performing public duties on matters of public concern.) Audio or video recording of public meetings is permitted provided it is done in a quiet and orderly manner, does not interfere with the conduct of the meeting, does not block the view of any person attending the public meeting and does not block any aisle, row, ingress or egress. Rules governing citizen conduct during public meetings of the Board of County Commissioners can be found in the Administrative Code and Section 1.12 of the Rules of Procedure, Board of County Commissioners, Charlotte County, available online at www.charlottecountyfl.gov.

. . .

**If an individual fails to immediately cease conduct prohibited by these Rules upon request, a Trespass Warning may be issued by the County Administrator (or his or her designee) pursuant to County Ordinance 2016-027.**

(Doc. #116-2, p. 2 emphasis in original).[2]

---

[2] The trespass warning and County Ordinance 2016-027/Facility Rules were not attached as exhibits to the SAC. They were, however, attached by some defendants in their motions to dismiss. (See Doc. #116-2.) Both are properly considered herein pursuant to the incorporation-by-reference doctrine because they are central to Sheets's claims and Sheets did not dispute their authenticity in his responses. See Johnson v. City of Atlanta, 107 F.4th 1292, 1300-01 (11th. Cir. 2024). The Court also takes judicial notice of the ordinances and rules since they are not subject to reasonable dispute because they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. See Bryant v. Ford, 967 F.3d 1272, 1275 (11th Cir. 2020).

Pribble, Charlotte County's Security Manager, directed Deputy Greenwood to make a police report and to initiate a process to trespass Sheets from the library.  (Id. ¶¶ 32, 42.)  Flores, Charlotte County's Administrator, drafted and signed a trespass warning that stated Sheets violated County Rule 8.  (Id. ¶¶ 34, 43.)  Pribble signed and ultimately issued this trespass warning. (Id. ¶¶ 33-34.)  The trespass warning prevented Sheets, who had planned to attend a committee meeting "at the mid county regional library on July 14th, 2021," from visiting the library for one year.  (Id. ¶¶ 32, 35-36.)

**III.**

The SAC asserts three First Amendment claims pursuant to 42 U.S.C. § 1983 against all Defendants.  Count One alleges viewpoint discrimination; Count Two alleges prior restraint; and Count Three alleges retaliation. All the Defendants move to dismiss on qualified immunity grounds, and Defendants Cestaro, Flores, and Pribble also argue that Sheets has failed to state any claim. Given, however, that Sheets failed to overcome Defendants' entitlement to qualified immunity, the Court will not discuss whether Sheets stated a claim.

### A.   Sheets Cannot Overcome Defendants' Entitlement to Qualified Immunity

The qualified immunity general principles are well-established.   Qualified immunity protects government officials

-6-

from civil litigation and liability for torts committed while performing discretionary duties unless the conduct violates a clearly established statutory or constitutional right of which a reasonable person would have known. Gervin v. Florence, 139 F.4th 1236, 1260 (11th Cir. 2025); Huggins v. Sch. Dist. Of Manatee Cnty., 151 F.4th 1268, 1278 (11th Cir. 2025).

Courts utilize a burden-shifting analysis to determine whether official conduct is protected by qualified immunity. Huggins, 151 F.4th at 1278. First, the official must prove that he or she was acting within the scope of discretionary authority when the allegedly wrongful act occurred. DeMarcus v. Univ. of S. Ala., 133 F.4th 1305, 1317 (11th Cir. 2025). The actions must have been undertaken pursuant to his or her duties and within the scope of his or her authority. Huggins, 151 F.4th at 1278. Courts only consider the general nature of the official action, temporarily disregarding the alleged illegality of the act. Id.

Second, if the official makes the required showing, the burden shifts to the plaintiff to show that: (1) the conduct violated his statutory or constitutional right and (2) the right was clearly established at the time of the challenged conduct. Id.; Watkins v. Davis, 156 F.4th 1084, 1097 (11th Cir. 2025). For the law to be clearly established, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government

-7-

agent that what defendant is doing violates federal law in the circumstances." King v. Pridmore, 961 F.3d 1135, 1145 (11th Cir. 2020)(quoting Hudson v. Hall, 231 F.3d 1289, 1294 (11th Cir. 2000)).

A plaintiff may rely only on three types of substantive law to prove a right was clearly established: (1) case law with indistinguishable facts;[3] (2) a broad statement of principle within the Constitution, statute, or case law; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law. Huggins, 151 F.4th at 1261; Lewis v. City of W. Palm Beach, 561 F.3d 1288, 1291-92 (11th Cir. 2009).

Based upon the SAC and the briefs from the parties, the Court finds that all Defendants are entitled to qualified immunity, as Sheets has failed to meet his burden on either count.

### (1) All Defendants Acted Within the Scope of Their Discretionary Authority

### (a) Linda Armstrong

Armstrong as an employee of the Charlotte County Supervisor of Elections was acting within her discretionary authority when she instructed Seargent that Sheets was not permitted to record inside the polling station. Further, Armstrong had the power as

---

[3] A plaintiff may only cite to the following jurisdictions: (1) binding decisions of the Supreme Court of the United States; (2) the United States Court of Appeals for the Eleventh Circuit; and (3) the highest court of the pertinent state, here the Florida Supreme Court. Gervin, 139 F.4th at 1264; Wate v. Kubler, 839 F.3d 1012, 1018 (11th Cir. 2016).

an employee of the Charlotte County Supervisor of Elections to remove Sheets from the polling station for violating any rules, regulations, and statutes aimed at ensuring an efficient and orderly election.  Accordingly, the burden shifts to Sheets to prove that Armstrong is not entitled to qualified immunity.

### (b)  Robert Cestaro

Cestaro was acting within his discretionary authority as a security guard when he kicked Sheets out of the library.  As a security guard, Cestaro was tasked with ensuring the security of the library and enforcing Facility Rules within the library. Accordingly, it was well within Cestaro's powers to kick Sheets out of the building for allegedly violating County Rule 8. Therefore, the burden shifts to Sheets to prove that Cestaro is not entitled to qualified immunity.

### (c)  Hector Flores

Flores as the County Administrator for Charlotte County was acting within his discretionary authority when he drafted and signed the trespass warning.  The County Administrator is responsible for "all administrative matters and operations under the authority of the board of county commissioners."  (Doc. # 116-4, p. 6).  As such, the County Administrator is tasked with enforcing County Ordinances, like County Ordinance 2016-027, which permits issuing a trespass warning against people who violate

-9-

Facility Rules.  Accordingly, the burden shifts to Sheets to prove that Flores is not entitled to qualified immunity.

### (d)   Tony Pribble

Pribble was acting within his discretionary authority as the Security Manager when he directed Deputy Greenwood to draft a police report and initiate the process to trespass Sheets, as well as when Pribble issued the trespass warning to Sheets.  Part of the duties of the Security Manager is to administer all policies related to safety and security for all County buildings, including the Facility Rules themselves.  (Doc. # 116-5, p. 1).  Further, it was within Pribble's power to trespass Sheets as Rule 8 explicitly states that "[a]nyone failing to immediately cease audio or video recording . . . will be immediately trespassed without warning." (Doc. #116-5, p. 2).  Accordingly, the burden shifts to Sheets to prove that Pribble is not entitled to qualified immunity.

### (e)   Julie Seargent

Seargent as an election worker was acting within her discretionary authority when she kicked Sheets out of the library. Seargent was tasked with ensuring that all rules were followed at the polling station and therefore had the power to remove anyone violating the rules.  Accordingly, the burden shifts to Sheets to prove that Seargent is not entitled to qualified immunity.

-10-

**(2)   Sheets Fails to Meet His Burden**

All Sheets's First Amendment claims boil down to the fact that he was not permitted to videotape the closing of the polls, was kicked out of the library, and was trespassed from the library. Sheets asserts that this filming is "journalism" protected by the First Amendment.   (Doc. #114, ¶ 39.)   The SAC then proceeds to allege that the Defendants' actions were taken either: (1) due to Sheets's "Government Accountability Journalism" viewpoint; (2) to prevent Sheets from gathering and publishing information; and/or (3) in retaliation for his videotaping activity.   (Doc. #114, ¶¶ 45-46, 61, 70-72.)   All Defendants argue: (1) no First Amendment right was violated and (2) at the time Sheets was kicked out of the library and trespassed there was not a clearly established First Amendment right to videotape the closing of the polling stations.   (Doc. #117, pp. 5-6; Doc. # 116, pp. 15-16.)   The Court agrees with the Defendants.

> **(a)   There Is No First Amendment Right to Record the Closing of Polls**

Sheets argues he has a First Amendment right to record the closing of polls, which he claims is permitted under County Rule 8 and various other Florida Statutes.   (Doc. #114, ¶¶ 15, 25.) Defendants, however, contend that no such right exists and the statutes and ordinances referred to by Sheets actually prohibit recording inside the polling station or other County facilities.

-11-

(Doc #116, pp. 15-16; Doc. #117, pp. 5-6.)  While all parties agree that County Rule 8 is constitutional as written, Sheets in effect is making an as-applied challenge against the ordinance.  The provision applied at issue prohibits the recording inside of County buildings, unless there is a public meeting, or the recording has been approved by the County Administrator.  See CHARLOTTE COUNTY, FLA., CODE OF ORDINANCES § 1-2-82 (2025); see also Doc. #116-2, p. 2 (providing the Facility Rules).  This provision does not apply to "1) [a]uthorized law enforcement personnel, or 2) County officials, where wither [sic] are directly performing public duties on public concern."  (Doc. #116-2, p. 2.)

Sheets correctly identifies that the "First Amendment protects the right to gather information about what public officials do on public property and specifically, a right to record matters of public interest."  Smith v. City of Cumming, 212 F.3d 1332, 1333 (11th Cir. 2000).  This First Amendment guarantee, however, is not absolute.  Id.; Elrod v. Burns, 427 U.S. 347, 360 (1976).  "The Constitution does not require the government to 'grant access to all who wish to exercise their right to free speech,' no matter the setting, 'without regard to the nature of the property or to the disruption that might be caused.'"  McDonough v. Garcia, 116 F.4th 1319, 1322 (11th Cir. 2024)(en banc)(quoting Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 789-800 (1985)).  Whether the right to record

-12-

invalidates any regulation, however, depends on the forum in which it applies.[4]  Id.

The library — for purposes of the election — was likely a nonpublic forum. This is because the polling station "is not by tradition or designation a forum for public communication." Minn. Voters All. v. Mansky, 585 U.S. 1, 11 (2018); see also Mansky, 585 U.S. at 6-7 (explaining the history of elections in the United States).  Instead, the County specifically set aside the library for the sole purpose of voting on October 21, 2020.  As such, the library was likely a nonpublic forum at least for election day.

Statutes or rules that restrict speech in a nonpublic forum must be viewpoint neutral and reasonable in light of the purpose served by the forum.  See Garcia, 116 F.4th at 1322.  Here, the previously enacted Rule restricted Sheet's ability to record public officials.  See CHARLOTTE COUNTY, FLA., CODE OF ORDINANCES § 1-2-82 (2025); see also Doc. #116-2, p.2 (providing the Facility Rules).  Therefore, the Rule as applied must be viewpoint neutral and reasonable in light of the purpose served by the forum.

Here, the anti-recording Rule is reasonable.  The First Amendment does not require the government to permit all speech on

---

[4] There are four types of forums: the traditional public forum, the designated public forum, the limited public forum, and the nonpublic forum.  Garcia, 116 F.4th at 1322.  The Court will not spend time defining each forum as only the nonpublic forum is at issue here.  The Court notes there is a colorable argument for the polling station to be a limited public forum, however, it opts to not deal with the limited public forum as the same standard for nonpublic forums is utilized for limited public forums.  Garcia, 116 F.4th at 1322.

property that it owns and controls but does require such restriction to be reasonable. Int'l Soc'y for Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 678 (1982). By prohibiting recording, the ordinance maintains security, decorum, and transparency while permitting individuals to still observe the closing of polls. See Fla. Stat. § 101.5614 (permitting individuals to watch the election board verify the election, while prohibiting poll watchers from touching any ballot or ballot container or from interfering with or obstructing the orderly count of the ballots); Fla. Stat. § 102.031(5) (prohibiting photography within the polling station). The County Rule seeks to exercise the County's right to avoid interruptions to the performance of the duties of the County's employees. Cornelius, 473 U.S. at 805-06. Accordingly, the Rule is reasonable since it secures the building to facilitate an efficient and secure election.

Although Sheets alleged the Defendants enforced the Rule because of his viewpoint, his factual allegations are insufficient to support the conclusion. The only facts Sheets provided in support were the Defendants knowledge of his viewpoint — through various means — and his ability to film at other Charlotte County polling locations — run by different employees. (Doc. #114, ¶¶ 3, 40-46.) These facts do not permit any reasonable inference that Defendants acted because of Sheet's viewpoint, because the Court sees no similarly-situated comparator nor are there facts to

-14-

suggest bias against individuals with "government accountability" viewpoints.  Without such facts, the Court is required to speculate about the motivating factor for Defendants' actions.

Further, the Rule does not facially "discriminate on the basis of viewpoint."  Garcia, 116 F. 4th at 1324.  The Rule only bans recording in County-owned buildings without consent or without the approval of the County Administrator.[5]  Such general prohibitions, alongside the exceptions, do not regulate speech based on the "specific motivating ideology or the opinion or perspective of the speaker."  Rosenberger, 515 U.S. at 829.

Since the Rule applies in a nonpublic forum and is both reasonable and viewpoint neutral — facially and as applied - there is no constitutional right to film the closing of polls.  As such, Sheets cannot overcome qualified immunity for any of the Defendants.

> **(b)   Even If There Was A Right, It Was Not A Clearly Established Right**

The law in the Eleventh Circuit was not sufficiently clear at the time of the filming to defeat qualified immunity.  While Sheets properly directs the Court's attention to Smith, where the Eleventh Circuit found that videotaping a police officer and the surrounding

---

[5] While there are some exceptions to the Rule, none are relevant to the discussion here since Sheets was not recording County Officials, but rather County Employees conducting their job duties.

area is protected by the First Amendment, Sheets failed to consider later cases clarifying Smith.  212 F.3d at 1333.

In 2021, the Eleventh Circuit clarified Smith since the opinion "provided few details regarding the facts of the case, making it difficult to determine the context of the First Amendment right it recognized."  Crocker v. Beatty, 995 F.3d 1232, 1241 (11th Cir. 2021)(quotation marks omitted)(quoting Kelly v. Borough of Carlisle, 622 F.3d 248, 260 (3d Cir. 2010)).  There the Eleventh Circuit grappled with the factual and legal nuances that were relevant to Crocker ultimately reaching the opposite outcome of Smith.  Crocker, 995 F.3d at 1242-43 (considering the context of the situation and whether plaintiff violated various laws); see also Khoury v. Miami-Dade Cnty. Sch. Bd., 4 F.4th 1118, 1129 (11th Cir. 2021)(considering the context of the situation, the policies of the police department, the knowledge of the officer that plaintiff had the right to record, and whether plaintiff violated various laws).

The Court finds that the law was not sufficiently clear to place public officials on notice that it would violate the First Amendment to kick an individual out for recording a polling station after the polls had closed.  Nor was it sufficiently clear that it would violate the First Amendment to trespass an individual for violating a County Rule that prohibited filming inside County buildings.  This is because the contours of the constitutional

-16-

right are not "sufficiently clear that a reasonable official would understand what he is doing violates the law such that in the light of pre-existing law the unlawfulness [is] apparent."  Aguirre v. Seminole Cnty., 158 F.4th 1276. 1297 (11th Cir. 2025)(internal quotation marks omitted)(quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)).  Any reasonable official attempting to determine whether what he is doing violates the law would instead have to "grapple with factual and legal nuances relevant to a given case," and likely reach differing conclusions.  See generally Ghandour v. City of Miami, 710 F. Supp. 3d 1188, 1198 (S.D. Fla. 2024); see also Zorn v. Linton, 607 U.S. --, No. 25-297, 2026 WL 795469, at *2 (2026)(per curiam)(stating that for a right to be clearly established courts generally "need to identify a case where an officer acting under similar circumstances . . . was held to have violated" the constitution because "principles stated generally . . . do not suffice); Crocker, 995 F.3d at 1240-43 (finding there was no clearly established right to record a police officer where there was a rapidly evolving fatal crash and the plaintiff was arguably violating at least two different Florida laws); Khoury, 4 F.4th at 1129-30 (finding there was a clearly established right where no rapidly evolving scene, plaintiff was not violating any laws, officer knew of the plaintiff's First Amendment right, and it was the policy of the police department to allow the public to record officers).

Under the factual allegations in the SAC, it is unlikely that Sheets had a First Amendment right to videotape the closing of the polls.  Further, given the lack of clarity on the bounds of the First Amendment right to record public officials, it cannot be said that, in this context, such First Amendment right was clearly established.  As such, Sheets cannot satisfy the "beyond debate" standard laid out by the United States Supreme Court in Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011).  Therefore, all Defendants are entitled to qualified immunity on all First Amendment Claims brought by Sheets.

**B.    Sheets Establishes No Claims Against Defendants in Their Official Capacity**

Finally, since there is no underlying constitutional violation, there can be no Monell claim.  See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986).  Accordingly, all First Amendment Claims brought by Sheets against the Defendants in their official capacity are dismissed.

Accordingly, it is now

**ORDERED:**

(1)  Defendants', Tony Pribble, Robert Cestaro, and Hector Flores, Motion to Dismiss Second Amended Complaint (Doc. #116) is **GRANTED.**

(2)    Defendants', Linda Armstrong and Julie Seargent, Motion to Dismiss Second Amended Complaint (Doc. #117) is **GRANTED.**

(3)    Counts 1-3 are **DISMISSED without prejudice.**

**DONE AND ORDERED** at Fort Myers, Florida, this ___25th___ day of March 2026.

_____

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:

Parties of record

-19-